ALBERT G. REDPATH ET AL., TRUSTEES (ESTATE OF EMMA B. AUCHINCLOSS) *v.* HUGH D. AUCHINCLOSS ET AL.

MALTBIE, C. J., BROWN, JENNINGS, ELLS and DICKENSON, Js.

Argued March 6—decided April 17, 1946.

*Bradford Boardman,* with whom, on the brief, was *Martin F. McKeon,* for himself as guardian ad litem of the defendant Janet J. Auchincloss.

*Albert L. Coles,* for himself as guardian ad litem of Nina G. Auchincloss et al.

MALTBIE, C. J. This is an action by trustees under the will of Emma B. Auchincloss, late of Fairfield, in which they seek an interpretation of certain of its provisions. Mrs. Auchincloss died September 11, 1942, leaving the will and three codicils to it. She was survived by two daughters and a son and also by five children of one of the daughters and three children of the son. After her death one child, Janet, was born on June 13, 1945, to the son. The questions presented concern her right to a share in one of the trusts established in the will.

In the third clause of the will the testatrix gave the residue of her estate to trustees with instructions that they "divide and set [it] apart" in three equal shares, one for each of her children if he or she survived her, and if not, for his or her children living at the death of the testatrix or thereafter born, with a further provision under which, in making the division,

allowance was to be made for the sum of one million dollars which she had previously given to the son. We shall refer to these trusts as the parent trusts. More specific directions were then given as to the disposition of the principal and interest of each of them. In a subparagraph A the testatrix provided that "out of the principal of the share hereinabove directed to be set apart for" the son or a daughter, the trustees were "to set apart" for each of his or her children who were alive at the death of the testatrix "a sub-share sufficient in the opinion of my said Trustees to produce an annual net income of Seventy-five hundred dollars." Then followed this provision: "In the event that any child or children shall be born to any of my said children after my death, then upon the birth of each such grandchild of mine, anything hereinafter contained in Subdivision B of this Clause Third notwithstanding, I direct my Trustees to set apart for such grandchild of mine, out of the principal of that portion of the share set apart for such grandchild's parent who was a child of mine which is then held in trust under this Clause Third of my Will for such child of mine, a sub-share sufficient in the opinion of my Trustees to produce an annual net income of Seventy-five hundred Dollars ($7,500)."

The will went on to provide in subparagraph B that the trustees should hold, manage and invest "such portion of the principal of the share set apart for any child of mine as shall remain from time to time after the setting apart of the subshares for the benefit of grandchildren of mine who are children of such child of mine, pursuant to the provisions of Subdivision A of this Clause Third," for the benefit of the son or daughter for his or her life with provisions for the disposition of the fund at his or her death. In a subparagraph C the trustees were directed to hold, man-

age and invest "the principal of each subshare set apart for the benefit of a grandchild of mine pursuant" to the preceding provisions in the will, and to apply to the use of the grandchild so much of "the net income from such subshare" as the trustees deemed advisable. There were further provisions in this and a succeeding subparagraph as to the disposition of income and principal of each subshare; but, as the only relevancy they have to our inquiry is the continuous use of the word "subshare" or "fund" in reference to the trusts for the grandchildren, we do not quote them. In a subparagraph D it is provided that, if at the expiration of twenty-one years after the death of the last survivor of "the following named or described persons, viz.," the testatrix' son and daughters and her grandchildren living at the time the will was made, there should be any grandchild or grandchildren then living who were born after her death, the principal of "each subshare then held" for such a grandchild should be transferred to him or her absolutely. The will also contained a provision empowering the trustees to hold "the corpus of two or more trusts under this Will in one or more consolidated funds, in which the separate trusts shall have undivided interests."

The only provision in the codicils which in any way deals with the disposition of the residue of the testatrix' estate occurs in the second. She there recites that in the third clause of her will she has made certain provisions for her grandchildren therein named, or who might be born after the execution of the will, and that since the date of its execution a daughter and a son, whom she names, have been born to her son. She then declares her wish and intention that these grandchildren shall participate in her estate on the same basis as her grandchildren named in her will, and that "each and every reference" to a child

or children born thereafter to her son shall be deemed to include "my said granddaughter and grandson as well as any child born to my said son after the date of the execution of this Codicil."

The will, which is drawn with unusual care and skill, shows clearly the general plan which was in the mind of the testatrix. It was her intent that her residuary estate should primarily be divided into the three parent trusts; then out of each of these trusts an equal portion was to be set apart as a separate trust for each child of her son or daughters, leaving the balance of the fund to be administered primarily for the benefit of that son or daughter. The difficulty is that, owing to the direction to make allowance for the gift to the son in determining the amount of the parent trust for him and his children, the fund set apart in this trust has proved to be insufficient to set up separate trusts for his four children now living which will produce net annual incomes of the amount provided in the will for each of them. In fact, the stipulation states that from the death of the testatrix until the birth of Janet the net income of the parent trust for the son was $27,928.83; that it does not now produce a net annual income of $22,500, the sum necessary to secure to each of the son's three children living at the death of the testatrix a net annual income of $7500 each; and that in the opinion of the trustees this condition will continue. If then, in accordance with the plan of the testatrix, the trustees set apart, as of the date of her death, from the parent trust the separate fund for each of the son's children alive at that time which would produce the required income, or as near that sum as might be, there would be no balance left in the parent trust from which a separate trust might be established for Janet. The question, then, is: Is Janet barred from any share in the parent trust by

reason of the deficiency of assets, or may she share equally in it with her sister and brothers?

We agree with the contention of Janet's counsel that the testatrix intended to treat equally the children of each of her own children whether the former were born before or after the testatrix' death. She evidently believed that there would be in the parent trust a sufficient sum to permit the creation of a separate trust for each of these grandchildren. That intent has proved impossible of attainment. Unfortunately for Janet, the testatrix definitely provided the method by which the rights of grandchildren born after her death were to be worked out. The trustees are directed, in the event that a grandchild is thereafter born, "upon the birth of each such grandchild" to set apart for him or her, out of the principal of the parent trust "which is then held in trust," a subshare sufficient in the opinion of the trustees to produce the stated income. She evidently believed that after separate trusts were set apart for grandchildren living at her death there would remain undisposed of a balance described in subparagraph B as "such portion of the principal of the share set apart for any child of mine as shall remain from time to time after the setting apart of the subshares for the benefit of grandchildren of mine." That her intent was to have the share of an afterborn grandchild set apart from the portion of the parent trust remaining at his or her birth is indicated by the use of the words "from time to time" in the quotation last made. Obviously, it was not in the mind of the testatrix that should further children be born after her death there should be a reconstitution of the trusts set apart as of that time for the grandchildren then living.

What would have been her desire had she foreseen the condition which now confronts the trustees we

have no means of knowing. That a contingency has arisen which the testatrix did not contemplate and for which she made no provision does not justify us in departing from the intent she has clearly expressed; *First National Bank & Trust Co.* v. *Baker*, 124 Conn. 577, 589, 1 Atl. (2d) 283; and, as apt to the present situation, we repeat the quotation we made in that case from *Louisville Presbyterian Theological Seminary* v. *Fidelity Trust & Safety Vault Co.*, 113 Ky. 336, 351, 68 S. W. 427: "It is of no use to speculate upon what she would have intended had she contemplated the deficiency which confronts the court. She had no intention about it. She did not consider the contingency. We must construe what she said, and we must construe it in the light of the recognized rules of construction, and not by speculation as to what she would have intended had she foreseen the present situation." See also *State Bank & Trust Co.* v. *Nolan*, 103 Conn. 308, 328, 130 Atl. 483; *New Britain Trust Co.* v. *Stoddard*, 120 Conn. 123, 126, 179 Atl. 642; *Rogers* v. *English*, 130 Conn. 332, 340, 33 Atl. (2d) 540. Nor can we give effect to the testatrix' general plan for equality in the treatment of her grandchildren, whether born before or after her death, when to do so would necessarily require us to set aside her clearly expressed intent as to the method to be used to accomplish that purpose. *Rogers* v. *English*, supra.

At the death of the testatrix each grandchild then living became vested with a right to the subshare provided for him or her in the will. *Steinway* v. *Steinway*, 163 N. Y. 183, 197, 57 N. E. 312. The provision in the will empowering the trustees to hold the corpus of two or more trusts in a consolidated fund, "in which the separate trusts shall have undivided interests," amounts to no more than authority to the trustees to adopt that course in the administration of the trusts,

if they see fit to do so. It affects the management of the property, not the right of each grandchild to receive a portion of the fund constituting the parent trust, and, if the trustees exercised the power, the only difference in the rights of a grandchild would be that, instead of having a beneficial interest in the particular property constituting a separate trust, he or she would have, with the others whose trusts were mingled in the common fund, an equal right to beneficial participation in the property constituting the joint fund. *Leach* v. *Godwin,* 198 N. Y. 35, 41, 91 N. E. 288; *Hayden* v. *Suyden,* 48 Misc. 108, 115, 96 N. Y. S. 681. Each would have just as much of a right vesting at the death of the testatrix as though the trust for him or her was separately managed.

At the time the principal portion of the residue was distributed to the trustees, they knew that another child was expected to be born to the son, and, while it is not expressly so stated, it is implied from the terms of the stipulation that they have not segregated from the parent trust for the son separate trusts for any of his children. It follows from what we have said that in setting up separate trusts for the children the trustees are not authorized to make any provision for Janet.

To the first question stated in the reservation, asking whether Janet Jennings Auchincloss is entitled to share in the trust estate equally with her sister and two brothers from the date of her birth, we answer "No." To the third question, asking whether the trustees are to set up subshares in the trust estate for the brothers and sister, to the exclusion of Janet, we answer "Yes." The other questions require no answer.

No costs will be taxed in this court to any party.

In this opinion the other judges concurred.